No. 22-10002

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

KARYN D. STANLEY,

Plaintiff-Appellant

v.

CITY OF SANFORD, FLORIDA,

Defendant-Appellee

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

_____

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE IN SUPPORT OF
PLAINTIFF-APPELLANT AND URGING REVERSAL ON THE ISSUE
ADDRESSED HEREIN

_____

KRISTEN CLARKE
  Assistant Attorney General

TOVAH R. CALDERON
JONATHAN L. BACKER
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 532-3528

*Stanley* v. *City of Sanford*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In accordance with Eleventh Circuit Rules 26.1, 26.1-2, and 26.1-3, the

United States as amicus curiae certifies that, in addition to those identified by

plaintiff-appellant and defendant-appellee, the following persons may have an

interest in the outcome of this case:

1. Backer, Jonathan L., U.S. Department of Justice, Civil Rights

   Division, counsel for the United States;

2. Calderon, Tovah R., U.S. Department of Justice, Civil Rights

   Division, counsel for the United States; and

3. Clarke, Kristen, U.S. Department of Justice, Civil Rights Division,

   counsel for the United States.

The United States is not aware of any publicly traded corporations or

companies that have an interest in the outcome of this case or appeal.

s/ *Jonathan L. Backer*
JONATHAN L. BACKER
  Attorney

Date: April 13, 2022

# TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ..........................................C-1

INTEREST OF THE UNITED STATES ..................................................................1

STATEMENT OF THE ISSUE.............................................................................2

STATEMENT OF THE CASE...............................................................................3

SUMMARY OF THE ARGUMENT .....................................................................4

ARGUMENT

      TITLE I PROHIBITS DISCRIMINATION ON THE BASIS OF
      DISABILITY WITH RESPECT TO FRINGE BENEFITS EARNED
      DURING AN EMPLOYEE'S TENURE BUT DISTRIBUTED
      POST-EMPLOYMENT ..................................................................................6

      A.    *Statutory Background*............................................................7

      B.    *Title I Prohibits Discrimination In The Provision Of Fringe*
              *Benefits That Are Distributed Post-Employment* .................10

      C.    *Title I Permits An Employee To Challenge A Discriminatory*
              *Fringe-Benefit Policy At The Time That She Becomes Subject*
              *To It Or Is Affected By It* ....................................................12

      D.    *The Fair Pay Act Clarifies Congress's Intent To Broadly*
              *Prohibit Discrimination In The Provision Of Fringe Benefits* ...........18

      E.    *The District Court Relied On* Gonzales, *But That Decision*
              *Predates The Fair Pay Act* ...................................................19

**TABLE OF CONTENTS (continued):**                              **PAGE**

CONCLUSION ....................................................................................................22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF CITATIONS

**CASES:**                                                        **PAGE**

*Bank of Am. Corp.* v. *City of Miami*, 137 S. Ct. 1296 (2017) .................................13

*Bennett* v. *Spear*, 520 U.S. 154 (1997) ....................................................................13

*Castellano* v. *City of New York*, 142 F.3d 58 (2d Cir.),
    cert. denied, 525 U.S. 820, and 525 U.S. 922 (1998)............................. 18-20

*Clapper* v. *Amnesty Int'l USA*, 568 U.S. 398 (2013)................................................15

*Daniels* v. *United Parcel Serv., Inc.*, 701 F.3d 620 (10th Cir. 2012).....................16

*Davis* v. *Bombardier Transp. Holdings (USA) Inc.*,
    794 F.3d 266 (2d Cir. 2015) ............................................................................16

*Ford* v. *Schering-Plough Corp.*, 145 F.3d 601 (3d Cir. 1998)......................... 19-20

*Gonzales* v. *Garner Food Servs., Inc.*, 89 F.3d 1523 (11th Cir. 1996),
    cert. denied, 520 U.S. 1229 (1997)........................................................ *passim*

*Groesch* v. *City of Springfield*, 635 F.3d 1020 (7th Cir. 2011) ..............................17

*\*Hishon* v. *King & Spalding*, 467 U.S. 69 (1984)............................................ 10-12

*Johnson* v. *K Mart Corp.*, 273 F.3d 1035 (11th Cir. 2001),
    vacated 273 F.3d at 1070 (11th Cir. 2001)............................................. 19-20

*Ledbetter* v. *Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007).............. 14-15, 17

*McKnight* v. *General Motors Corp.*, 550 F.3d 519 (6th Cir. 2008),
    cert. denied, 557 U.S. 935 (2009)...................................................................20

*Morgan* v. *Joint Admin. Bd.*, 268 F.3d 456 (7th Cir. 2001) ....................................20

*PGA Tour, Inc.* v. *Martin*, 532 U.S. 661 (2001)........................................................7

*Poullard* v. *McDonald*, 829 F.3d 844 (7th Cir. 2016)............................................16

**CASES (continued):**                                       **PAGE**

*Robinson* v. *Shell Oil Co.*, 519 U.S. 337 (1997).............................................. 14, 19

*Schuler* v. *PricewaterhouseCoopers, LLP*, 595 F.3d 370 (D.C. Cir. 2010)............16

*Slomcenski* v. *Citibank, N.A.*, 432 F.3d 1271 (11th Cir. 2005) ..............................20

*Tarmas* v. *Secretary of Navy*, 433 F. App'x 754 (11th Cir. 2011) .........................16

*Weyer* v. *Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000) ........20

**STATUTES:**

Americans with Disabilities Act of 1990
     42 U.S.C. 12101(a)(5) ....................................................................18
     42 U.S.C. 12101(b)(1) .................................................................7, 18
     42 U.S.C. 12102(1)........................................................................8, 12
     42 U.S.C. 12111.................................................................................1
     42 U.S.C. 12111(8).................................................................. *passim*
     42 U.S.C. 12111(8) (2006) ..............................................................9
     42 U.S.C. 12112.................................................................................7
     *42 U.S.C. 12112(a) ............................................................... *passim*
     42 U.S.C. 12112(b)........................................................................8, 10
     42 U.S.C. 12112(b) (2006) ............................................................10
     *42 U.S.C. 12112(b)(2) ......................................................... *passim*
     42 U.S.C. 12116.................................................................................1
     *42 U.S.C. 12117(a) ............................................................... *passim*

Civil Rights Act of 1964
     42 U.S.C. 2000e-5 ..................................................................... 9, 13-14
     42 U.S.C. 2000e-5(e)(1) ............................................................. 14-15
     42 U.S.C. 2000e-5(e)(2) (2006)....................................................14
     *42 U.S.C. 2000e-5(e)(3) ....................................................... *passim*
     42 U.S.C. 2000e-5(g)(1) ................................................................14

Endangered Species Act
     16 U.S.C. 1540(g) ..........................................................................13

**STATUTES (continued):**                                           **PAGE**

Fair Housing Act
    42 U.S.C. 3610(a) ...........................................................................13

ADA Amendments Act of 2008,
    Pub. L. No. 110-325, 122 Stat. 3553 .............................................9

*Lilly Ledbetter Fair Pay Act of 2009,
    Pub. L. No. 111-2, 123 Stat. 5 ................................................. 5-6

**REGULATION:**

29 C.F.R. Pt. 1630, App. ..........................................................................10

**RULE:**

Fed. R. of App. P. 29(a) ...........................................................................2

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

————————————

No. 22-10002

KARYN D. STANLEY,

Plaintiff-Appellant

v.

CITY OF SANFORD, FLORIDA,

Defendant-Appellee

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

————————————

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE IN SUPPORT OF
PLAINTIFF-APPELLANT AND URGING REVERSAL ON THE ISSUE
ADDRESSED HEREIN

————————————

## INTEREST OF THE UNITED STATES

This case presents an important question regarding whether Title I of the

Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. 12111 *et seq.*, prohibits

discrimination on the basis of disability in the provision of post-employment fringe

benefits.  The Department of Justice and the Equal Employment Opportunity

Commission (EEOC) share enforcement responsibility under Title I, see 42 U.S.C.

12117(a), and the EEOC has Title I rulemaking authority, see 42 U.S.C. 12116.

The EEOC has long taken the position that Title I's protections against discrimination apply to benefits earned during an employee's tenure but received during the post-employment period. See, *e.g.*, EEOC Amicus Br. at 9-25, *Ford* v. *Schering-Plough Corp.*, 145 F.3d 601 (3d Cir. 1998) (No. 96-5674); EEOC Amicus Br. at 14-22, *Lewis* v. *KMart Corp.*, 180 F.3d 166 (4th Cir. 1999) (No. 98-2179); EEOC Amicus Br. at 13-22, *Gonzales* v. *Garner Food Servs., Inc.*, 89 F.3d 1523 (11th Cir. 1996) (No. 95-8533); EEOC Amicus Br. at 7-14, *Johnson* v. *K Mart Corp.*, 273 F.3d 1035 (11th Cir. 2001) (No. 99-14563). Accordingly, the United States has a substantial interest in the proper resolution of the question raised in this appeal.

The United States files this brief under Federal Rule of Appellate Procedure 29(a)(2).

## STATEMENT OF THE ISSUE

The United States will address the following question only:

Whether Title I of the ADA prohibits discrimination on the basis of disability with respect to fringe benefits earned during an employee's tenure but distributed post-employment.

## STATEMENT OF THE CASE

1. Plaintiff Karyn Stanley worked as a firefighter for the City of Sanford for approximately 20 years. Doc. 1, at 3.[1] Stanley was diagnosed with Parkinson's disease in 2016 (Doc. 38, at 4-5), but she continued working until 2018 when the disease progressed to the point that it rendered her unable to perform the essential functions of her job, forcing her to retire (Doc. 1, at 3). The City provides a fringe benefit to its employees by continuing to pay their health-insurance premiums for a certain period of time after they retire. Doc. 1, at 4. That post-employment health-benefits policy has changed over the years. Doc. 1, at 4. Stanley alleges that, as of 2003, the terms of the policy entitle her to fewer years of subsidized benefits than she would have received if she were not a person with a disability. Doc. 1, at 4.[2]

2. After she retired, Stanley filed suit alleging, among other claims, a violation of Title I of the ADA. Doc. 1. The district court dismissed that claim, finding it foreclosed by this Court's decision in *Gonzales* v. *Garner Food Services, Inc.*, 89 F.3d 1523 (11th Cir. 1996), cert. denied, 520 U.S. 1229 (1997). Doc. 27, at 5. *Gonzales* held that a former employee could not challenge a disability-based

---

[1] "Doc. __, at __" refers to the docket entry and page number of documents filed on the district court's docket.

[2] The United States takes no position on whether Stanley adequately alleges that the City's post-employment health-benefits policy discriminates on the basis of disability.

cap on post-employment health-insurance benefits because he "neither held nor desired to hold a position" with his former employer "at or subsequent to the time" that he stopped receiving health benefits and therefore was not a "qualified individual" under Section 12112(a). 89 F.3d at 1526. Based on *Gonzales*'s reasoning, the district court held that Stanley failed to state a claim under Title I because, as a former employee at the time that the City stopped paying her health-insurance premiums, she was not a "qualified individual." Doc. 27, at 3-5 (quoting 42 U.S.C. 12112(a)).

3. On December 29, 2021, the district court granted the City's motion for summary judgment on other remaining claims. Doc. 45.

4. After entry of judgment, Stanley timely appealed the court's motion-to-dismiss and summary-judgment orders. Doc. 49.

## SUMMARY OF THE ARGUMENT

This Court should hold that Title I of the ADA prohibits discrimination in the provision of fringe benefits earned during an employee's tenure but distributed after her employment concludes. Title I prohibits discrimination against a "qualified individual on the basis of disability" in the "terms, conditions, and privileges of employment," including "fringe benefits." 42 U.S.C. 12112(a) and (b)(2). The district court, relying on this Court's decision in *Gonzales* v. *Garner Food Services, Inc.*, 89 F.3d 1523 (11th Cir. 1996), cert. denied, 520 U.S. 1229

(1997), held that Stanley could not state a claim under Title I because she was no longer a "qualified individual" when she stopped receiving post-employment health benefits. The district court, however, overlooked that the ADA has been amended since *Gonzales* was decided.

The Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5, clarified that a claim under Title I is timely if the plaintiff sues when she "becomes subject to" or "is affected by" discrimination that occurred during her tenure. 42 U.S.C. 2000e-5(e)(3)(A) (incorporated by reference at 42 U.S.C. 12117(a)). That statutory change makes clear, consistent with Congress's intent in enacting the ADA, that Title I prohibits discrimination on the basis of disability in the provision of a fringe benefit earned during a plaintiff's tenure, even if the plaintiff does not receive the benefit in question until she is no longer employed. *Ibid.* Because *Gonzales*—and indeed all other circuit-level decisions that have addressed this issue—predate the Fair Pay Act, this Court must consider on a clean slate the question presented in this case. Considered that way, the answer is clear: the ADA prohibits discrimination in the provision of fringe benefits earned during an employee's tenure even when, at the time of suit, the plaintiff is a former employee.

## ARGUMENT

## TITLE I PROHIBITS DISCRIMINATION ON THE BASIS OF DISABILITY WITH RESPECT TO FRINGE BENEFITS EARNED DURING AN EMPLOYEE'S TENURE BUT DISTRIBUTED POST-EMPLOYMENT

The question of whether Title I prohibits discrimination on the basis of disability in the provision of post-employment fringe benefits implicates two subsidiary issues: (1) whether post-employment fringe benefits fall within the scope of prohibited discrimination; and (2) if they do, when Title I claims concerning post-employment fringe benefits accrue. An employer "discriminate[s]" under Title I when it provides on the basis of disability different "terms, conditions, [or] privileges of employment," including "fringe benefits." 42 U.S.C. 12112(a) and (b)(2). Nothing in Title I exempts from that prohibition fringe benefits that are earned during an employee's tenure but that are distributed in the post-employment period in the form of deferred compensation. And the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5, clarified that such benefits can be challenged during the post-employment period because that Act provides that Title I claims accrue (or re-accrue) at the time that a plaintiff is affected by discrimination that occurred during her tenure. Although the district court held that this Court's decision in *Gonzales* v. *Garner Food Services, Inc.*, 89 F.3d 1523 (11th Cir. 1996), cert. denied, 520 U.S. 1229 (1997), bars Stanley's claim (Doc. 27, at 5), that decision predates the Fair Pay Act and therefore does not

resolve how the question presented should be analyzed under the post-2009 version of the statute.

## A.    *Statutory Background*

Congress enacted the ADA to establish a "comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. 12101(b)(1).  "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)."  *PGA Tour, Inc.* v. *Martin*, 532 U.S. 661, 675 (2001) (citations omitted).

Title I's prohibitions on employment-based disability discrimination are set out at 42 U.S.C. 12112.  Section 12112(a) provides a "[g]eneral rule" that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. 12112(a).  A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. 12111(8).

Section 12112(b), entitled "[c]onstruction," provides a list of specified actions that are "include[d]" within Section 12112(a)'s general prohibition of discrimination. See 42 U.S.C. 12112(b)(1)-(7). Among other things, Section 12112(b)(2) clarifies that Title I prohibits discrimination in the provision of fringe benefits. It states that Title I's general prohibition of discrimination includes "participating in a contractual or other arrangement or relationship" with "an organization providing fringe benefits to an employee of the covered entity" that "has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter." 42 U.S.C. 12112(b)(2).[3]

Title I incorporates various powers, remedies, and procedures set out in Title VII of the Civil Rights Act of 1964. 42 U.S.C. 12117(a). More specifically, the ADA provides that "[t]he powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of [Title 42 of the United States Code] shall be the powers, remedies, and procedures [that Title I of the ADA] provides to the [EEOC], to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of [the ADA]

---

[3] The ADA defines "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities * * * ; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. 12102(1)(A)-(C).

* * * concerning employment." 42 U.S.C. 12117(a). As a result, the remedies set out in Section 2000e-5 are available to "*any person* alleging [employment] discrimination on the basis of disability in violation of any provision of [the ADA]." See *ibid.* (emphasis added).

A key feature of the Fair Pay Act was its 2009 amendment of Section 2000e-5 to provide plaintiffs with additional opportunities to invoke the statute's remedies. The Fair Pay Act clarified that

> an unlawful employment practice occurs[] with respect to discrimination in compensation * * * [1] when a discriminatory compensation decision or other practice is adopted, [2] when an individual *becomes subject to* a discriminatory compensation decision or other practice, or [3] when an individual is *affected by application* of a discriminatory compensation decision or other practice, *including each time* wages, *benefits*, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. 2000e-5(e)(3)(A) (emphases added). Congress specifically provided that those changes "shall apply to claims of discrimination in compensation brought under title I" of the ADA. 42 U.S.C. 2000e-5 note.[4]

---

[4] Although less relevant to the question presented in this case, Congress made additional changes to Title I in the ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, 122 Stat. 3553. As originally enacted, the ADA prohibited "discriminat[ion] against a qualified individual *with a disability because of the disability of such individual*," 42 U.S.C. 12112(a) (2006) (emphasis added), and defined the term "qualified individual with a disability" as "an individual *with a disability* who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires," 42 U.S.C. 12111(8) (2006) (emphasis added). The ADAAA modified

(continued…)

B.     *Title I Prohibits Discrimination In The Provision Of Fringe Benefits That Are Distributed Post-Employment*

Title I prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to  *  *  *  terms, conditions, and privileges of employment," including "fringe benefits."  42 U.S.C. 12112(a) and (b)(2).  For example, Title I prohibits an employer from "deny[ing] an individual with a disability who is qualified equal access to insurance or subject[ing] an individual with a disability who is qualified to different terms or conditions of insurance based on disability alone."  29 C.F.R. Pt. 1630, App. at 435.

By broadly prohibiting disability discrimination in "terms, conditions, and privileges of employment," Title I's protections extend to all benefits earned during employment, including ones that are not distributed until the post-employment period.  42 U.S.C. 12112(a).  As the Supreme Court explained in *Hishon* v. *King & Spalding*, 467 U.S. 69 (1984), "[a] benefit need not *accrue* before a person's employment is completed to be a term, condition, or privilege of

---

(…continued)
Section 12112(a) to prohibit "discriminat[ion] against a qualified individual *on the basis of disability*," and struck the words "with a disability" from the heading and text of Section 12111(8).  See 42 U.S.C. 12111(8) and 12112(a) (emphasis added).  Congress also amended the preamble to Section 12112(b) to specify that the various types of disability discrimination enumerated in subsection (b) are "include[d]" within term "discriminate against a qualified individual on the basis of disability," as used in Section 12112(a), and not just the term "discriminate," as the pre-ADAAA version of the statute provided.  Compare 42 U.S.C. 12112(b) (2006), with 42 U.S.C. 12112(b).

that employment relationship." *Id.* at 77 (emphasis added). "Pension benefits, for example, qualify as terms, conditions, or privileges of employment even though they are received only after employment terminates." *Ibid.* An employer therefore violates Title I not only by failing to distribute a benefit to a former employee, but also by "afford[ing] in a manner contrary to" Title I a benefit that is "part and parcel of the employment relationship," even if that benefit accrues after "a person's employment is completed." *Id.* at 75-77. In other words, Title I covers not only benefits received during employment, but also those earned while employed but paid out later as a form of deferred (future) compensation.

Here, there is no dispute that Stanley was a "qualified individual" who was able to "perform the essential functions" of her job throughout her 20-year tenure as a firefighter, while the allegedly discriminatory fringe benefit was part of her "terms, conditions, and privileges of employment." 42 U.S.C. 12111(8), 12112(a); see also Doc. 1, at 4. The challenged fringe benefit also was part of Stanley's "terms, conditions, and privileges of employment" between 2016, when she was diagnosed with Parkinson's disease, and 2018, when she retired. See Doc. 38, at 4-5. She remained a "qualified individual" during those two years because she was still able, "with or without reasonable accommodation," to "perform the essential functions" of her job, despite having been diagnosed with "a physical * * * impairment that substantially limits one or more major life activities."

42 U.S.C. 12102(1)(A), 12111(8); see also Doc. 38, at 4-5. Because retirement is a condition precedent to receiving post-employment health insurance, it is true that the challenged benefit did not accrue until Stanley had retired because of a disability that eventually made her no longer a "qualified individual." Doc. 1, at 4. But the gap between provision and accrual of the challenged benefit does not render it any less of a term, condition, or privilege of Stanley's employment. See *Hishon*, 467 U.S. at 77.[5]

C. *Title I Permits An Employee To Challenge A Discriminatory Fringe-Benefit Policy At The Time That She Becomes Subject To It Or Is Affected By It*

Although an employer discriminates under Title I by providing an employee with a different fringe benefit on the basis of disability—even if that benefit accrues post-employment—that does not resolve the separate question of when a lawsuit challenging such a policy is timely. When Congress enacted the Fair Pay Act in 2009, it clarified that a plaintiff can challenge a discriminatory fringe-benefit policy not only when the employer makes the decision to provide such a

---

[5] That Stanley had not been diagnosed with Parkinson's disease in 2003, when the City adopted the challenged fringe-benefit policy, does not affect her claim. Title I prohibits "discriminat[ion] against a qualified individual *on the basis of disability*." 42 U.S.C. 12112(a) (emphasis added). Thus, an employer's adoption (or implementation) of a policy that discriminates on the basis of disability in the provision of fringe benefits does not fall outside of Title I's scope merely because an employee is not affected by that discriminatory policy until a later point when she develops "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. 12102(1)(A); see also note 4, *supra*.

benefit, but also when the benefit in question is distributed (or would have been distributed in the absence of disability discrimination).

Section 12117(a) of Title I incorporates by reference the remedies available under Title VII of the Civil Rights Act of 1964. 42 U.S.C. 12117(a) (incorporating by reference 42 U.S.C. 2000e-5). That remedial provision plainly does not exclude a former employee who is no longer a "qualified individual" under Title I, because it is available to "*any person* alleging [employment] discrimination on the basis of disability in violation of any provision of [the ADA]." 42 U.S.C. 12117(a) (emphasis added). As the Supreme Court held in construing the scope of the Endangered Species Act's citizen-suit provision, 16 U.S.C. 1540(g), use of the term "any person" in a remedial provision conveys "authorization of remarkable breadth when compared with the language Congress ordinarily uses" and "expand[s] [statutory] standing  *  *  *  to the full extent permitted under Article III." *Bennett* v. *Spear*, 520 U.S. 154, 164-165 (1997); see also *Bank of Am. Corp.* v. *City of Miami*, 137 S. Ct. 1296, 1303 (2017) (construing language nearly identical to Section 12117(a)'s in the Fair Housing Act's remedial provision, 42 U.S.C. 3610(a), as evincing "a congressional intention to define standing as broadly as is permitted by Article III of the Constitution" (citation and internal quotation marks omitted)).

Moreover, the ADA's structure demonstrates that its remedial provision necessarily allows former employees to bring, at the very least, some types of Title I claims. That is because Section 12112(a) prohibits discrimination on the basis of disability in the "discharge of employees," 42 U.S.C. 12112(a), and Section 2000e-5 lists "reinstatement of * * * employees" among the remedies available under the statute, 42 U.S.C. 2000e-5(g)(1). Such provisions "necessarily refer[] to former employees." *Robinson* v. *Shell Oil Co.*, 519 U.S. 337, 342 (1997).

Despite the theoretical availability of a remedy to former employees seeking redress from discriminatory benefits earned during their concluded tenure, the ADA might have posed difficulties for individuals hoping to bring such claims before Congress's enactment of the Fair Pay Act. A claimant suing under Section 2000e-5 must first file a charge with the EEOC within either 180 or 300 days (depending on the jurisdiction) "after the alleged unlawful employment practice occurred." 42 U.S.C. 2000e-5(e)(1). Until Congress enacted the Fair Pay Act, Section 2000e-5 specified "when an unlawful employment practice occurs" only with regard to discrimination associated with seniority systems. 42 U.S.C. 2000e-5(e)(2) (2006). In *Ledbetter* v. *Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), the Supreme Court construed Section 2000e-5's clock as being "triggered when a discrete unlawful practice takes place." *Id.* at 628. The Court further

explained that "[a] new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination." *Ibid.*

Thus, before 2009, a claimant seeking redress from a discriminatory type of deferred compensation confronted a potential catch-22. A claim challenging discrimination in the provision of deferred compensation when it first became part of the terms, conditions, or privileges of employment could have faced significant standing hurdles. See *Clapper* v. *Amnesty Int'l USA*, 568 U.S. 398, 402 (2013) (stating that a "hypothetical future harm that is not certainly impending" cannot be the basis for Article III standing). At the same time, under *Ledbetter*, a former employee challenging a discriminatory fringe benefit that had become part of her "terms, conditions, and privileges of employment" at a time outside of Section 2000e-5(e)(1)'s limitations window might have confronted timeliness obstacles. That is because such a claim could have been characterized as merely seeking redress for the "adverse effects resulting from the past discrimination." *Ledbetter*, 550 U.S. at 628.

The Fair Pay Act resolved this potential dilemma by providing that

> an unlawful employment practice occurs[] with respect to discrimination in compensation * * * [1] when a discriminatory compensation decision or other practice is adopted, [2] when an individual *becomes subject to* a discriminatory compensation decision or other practice, or [3] when an individual *is affected by application* of a discriminatory compensation decision or other practice, *including*

*each time* wages, *benefits*, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. 2000e-5(e)(3)(A) (emphases added).  Under the modified version of Title I, an employer's "liability may accrue" or re-accrue at any of the aforementioned points in time.  42 U.S.C. 2000e-5(e)(3)(B).

Consistent with its statutory text, courts have confirmed that "the phrase 'discrimination in compensation' [Section 2000e-5(e)(3)(A)] means paying different wages or *providing different benefits* to similarly situated employees." *Schuler* v. *PricewaterhouseCoopers, LLP*, 595 F.3d 370, 374 (D.C. Cir. 2010) (emphasis added); accord *Poullard* v. *McDonald*, 829 F.3d 844, 853 (7th Cir. 2016); *Daniels* v. *United Parcel Serv., Inc.*, 701 F.3d 620, 631-632 (10th Cir. 2012).  A "compensation claim under [Section 2000e-5(e)(3)(A)] accrues not only at the time of the discriminatory decision but also with each paycheck the victim receives," *Davis* v. *Bombardier Transp. Holdings (USA) Inc.*, 794 F.3d 266, 269 (2d Cir. 2015), and any other time that the "individual is [otherwise] affected by application of [the earlier] discriminatory compensation decision" or practice, 42 U.S.C. 2000e-5(e)(3)(A); see also *Tarmas* v. *Secretary of Navy*, 433 F. App'x 754, 760 (11th Cir. 2011) (applying the Fair Pay Act to a Title I claim because "[t]he Act amends [Title I] by providing that the statute of limitations for filing an EEOC charge alleging pay discrimination resets with each paycheck affected by a

discriminatory decision" (quoting *Groesch* v. *City of Springfield*, 635 F.3d 1020, 1024 (7th Cir. 2011)).

Section 2000e-5(e)(3)(A) therefore permits a plaintiff to challenge an employer's earlier decision to provide a discriminatory benefit each time that she is adversely affected by receiving a reduced benefit or by being denied a benefit that she would have otherwise received but for the discriminatory practice. As a result, the employer's "liability will accrue," see 42 U.S.C. 2000e-5(e)(3)(B), for its earlier discriminatory compensation decision even after the plaintiff's employment has concluded if the plaintiff "becomes subject to"—or "is affected by application of"—that decision after leaving her job, 42 U.S.C. 2000e-5(e)(3)(A).

That a former employee is no longer a "qualified individual" because she neither "holds" nor "desires" a job with her former employer does not affect the analysis. 42 U.S.C. 12111(8). Section 2000e-5(e)(3)(A) does not treat each discrete payment (or nonpayment) as a new discriminatory act that independently must satisfy all of Section 12112(a)'s elements to give rise to a Title I claim. Rather, Section 2000e-5(e)(3)(A) allows a Title I claim to "accrue" or re-accrue from an employer's past decision to provide a discriminatory fringe benefit at a later point in time, when the plaintiff actually "becomes subject to" or "is affected by" that decision. 42 U.S.C. 2000e-5(e)(3)(A) and (B); see also *Ledbetter*, 550 U.S. at 628 (describing distribution of compensation based on a discriminatory pay

structure as "adverse effects resulting from the past discrimination" and not a "new violation").

Accordingly—at least as of 2009—Title I permits a former employee to challenge discrimination on the basis of disability in the provision of fringe benefits earned during her tenure but distributed post-employment.

D.   *The Fair Pay Act Clarifies Congress's Intent To Broadly Prohibit Discrimination In The Provision Of Fringe Benefits*

The changes that Congress made to Title I in the Fair Pay Act cohere with and help reify the ADA's congressionally enacted purpose, which is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," including in the context of fringe benefits. 42 U.S.C. 12101(b)(1), 12112(a) and (b)(2).  In enacting the ADA, Congress found that "individuals with disabilities continually encounter various forms of discrimination, including  *  *  *  relegation to lesser  *  *  *  benefits." 42 U.S.C. 12101(a)(5).

An interpretation of Title I "that would prevent former employees who are no longer 'qualified individuals' from bringing claims of discrimination in the provision of post-employment fringe benefits would  *  *  *  undermine the plain purpose of sections 12112(a) and (b)(2):  to provide comprehensive protection from discrimination in the provision of fringe benefits." *Castellano* v. *City of New York*, 142 F.3d 58, 68 (2d Cir.), cert. denied, 525 U.S. 820, and 525 U.S. 922

(1998). That is so especially because "[m]any fringe benefits are paid out to those who no longer work and who are no longer able to work, and some fringe benefits are paid out to individuals precisely because they can no longer work." *Ibid.* Thus, "[i]n order for the rights guaranteed by Title I to be fully effectuated  *  *  * more than just individuals who are currently able to work with or without reasonable accommodations" must be able to sue under Title I to challenge their exclusion from post-employment fringe benefits. *Ford* v. *Schering-Plough Corp.*, 145 F.3d 601, 606 (3d Cir. 1998). A contrary holding also would "create a 'perverse incentive' for employers to interfere with the post-employment benefits of former employees" and would "nullify those portions of Title I that protect against discriminatory discharge and that authorize courts to order reinstatement." *Johnson* v. *K Mart Corp.*, 273 F.3d 1035, 1048 (11th Cir.) (quoting *Robinson*, 519 U.S. at 346), vacated 273 F.3d at 1070 (11th Cir. 2001).

The Fair Pay Act eliminated any preexisting mismatch between Congress's intent to broadly prohibit disability-based discrimination in the provision of fringe benefits and Title I's text.

E.    *The District Court Relied On* Gonzales, *But That Decision Predates The Fair Pay Act*

The district court held that Stanley's claim was barred by this Court's decision in *Gonzales* (Doc. 27, at 5), but that case predates the Fair Pay Act's changes to Title I. In *Gonzales*, a plaintiff challenged a cap that his former

employer had placed on only AIDS-related treatment in the health-benefit plan available to the company's former employees. 89 F.3d at 1524. This Court held that the plaintiff's status as a former employee prohibited him from challenging that policy under Title I. *Id.* at 1526. Specifically, this Court interpreted the statute's text—as it existed at that time—to mean that "Congress intended to limit the protection of Title I to either employees performing, or job applicants who apply and can perform, the essential functions of available jobs which their employers maintain"—*i.e.*, to exclude former employees. *Id.* at 1527.

Even assuming *Gonzales* was correctly decided based on Title I's text as it existed at that time, as discussed above, the Fair Pay Act modified the ADA in substantial ways that bear directly on the question of whether plaintiffs can challenge the discriminatory provision of post-employment fringe benefits. All of the circuit-level authority addressing this issue predates the Fair Pay Act. See *McKnight* v. *General Motors Corp.*, 550 F.3d 519 (6th Cir. 2008), cert. denied, 557 U.S. 935 (2009); *Johnson*, 273 F.3d 1035; *Morgan* v. *Joint Admin. Bd.*, 268 F.3d 456 (7th Cir. 2001); *Weyer* v. *Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000); *Castellano*, 142 F.3d 58; *Ford*, 145 F.3d 601; see also *Slomcenski* v. *Citibank, N.A.*, 432 F.3d 1271, 1280-1281 (11th Cir. 2005).

The significant changes that Congress has made to the ADA's text since *Gonzales* was decided mean that *Gonzales*'s interpretation of the statute as it

existed in 1996 does not dictate the proper interpretation of the materially different statute that applies today. *Gonzales* did not decide the question presented here, and this Court should consider that question on a clean slate.[6]

---

[6] The circuit-level authority addressing this issue also predates the ADAAA, which made several other significant changes to Title I. See note 4, *supra*. Although the ADAAA's changes to Title I are less relevant to the question presented than those made by the Fair Pay Act, the enactment of the ADAAA provides further reason for this Court to consider anew whether Title I prohibits discrimination in the provision of post-employment fringe benefits.

# CONCLUSION

For the foregoing reasons, this Court should hold, if it reaches the issue, that Title I prohibits discrimination on the basis of disability in the provision of post-employment fringe benefits.

Respectfully submitted,

KRISTEN CLARKE
  Assistant Attorney General

s/ Jonathan L. Backer
TOVAH R. CALDERON
JONATHAN L. BACKER
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 532-3528

**CERTIFICATE OF COMPLIANCE**

I certify that the attached BRIEF FOR UNITED STATES AS AMICUS CURIAE IN SUPPORT OF PLAINTIFF-APPELLANT AND URGING REVERSAL ON THE ISSUE ADDRESSED HEREIN does not exceed the type-volume limitation imposed by Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B). The brief was prepared using Microsoft Office Word 2019 and contains 4,703 words of proportionally spaced text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). The typeface is 14-point Times New Roman font.

s/ Jonathan L. Backer
JONATHAN L. BACKER
Attorney

Date: April 13, 2022

## CERTIFICATE OF SERVICE

I certify that on April 13, 2022, I electronically filed the foregoing BRIEF

FOR UNITED STATES AS AMICUS CURIAE IN SUPPORT OF PLAINTIFF-

APPELLANT AND URGING REVERSAL ON THE ISSUE ADDRESSED

HEREIN with the Clerk of the Court for the United States Court of Appeals for the

Eleventh Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.


s/ Jonathan L. Backer
JONATHAN L. BACKER
 Attorney